

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/28/2009

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-35587 |
| MARTIN CARTER, JR., | § | Chapter 13 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

### Background

This case presents the question of whether a debtor, who is not personally liable on a mortgage that matured pre-petition, may pay the full amount due on the mortgage over the course of the debtor's bankruptcy plan.

The facts of this case are not in dispute. The debtor's mother, Mary Lou Coleman, executed an adjustable rate reverse mortgage on her homestead with Wells Fargo Bank, N.A ("Wells Fargo") in the original amount of $79,500.00. The note provided that the loan matured upon Ms. Coleman's death. Ms. Coleman died in May 2008 and the debtor, Martin Carter, Jr., inherited a 20% interest in his mother's home.

Carter filed a chapter 13 bankruptcy petition on August 3, 2009. Carter claims the home that he inherited from his mother as his homestead. In his first amended plan, Carter proposes to pay Wells Fargo the mortgage's total outstanding indebtedness of $40,372.11 at 5.25% interest over 59 months. Wells Fargo objects to the inclusion of the mortgage in the bankruptcy plan and has moved for relief from the automatic stay. As set forth below, the Court denies Wells Fargo's objection and holds that Carter may pay the full amount due on the mortgage over the course of his bankruptcy plan.

**Jurisdiction & Venue**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408. This is a core proceeding under § 157(b).

**Analysis**

Wells Fargo objects to Carter's chapter 13 plan. First, Wells Fargo claims that since there is no privity of contract between Carter and Wells Fargo, Carter cannot cure the default on the debt owed Wells Fargo in his bankruptcy plan. Second, Wells Fargo argues that even if Carter is allowed to treat the debt in his plan, 11 U.S.C. § 1322(b)(2) prevents Carter from modifying the terms of the mortgage, which matured pre-bankruptcy, by paying the balance over 59 months. The Court will address each of Wells Fargo's arguments in turn.

**1. Privity of Contract**

Wells Fargo claims that since privity of contract between Carter and Wells Fargo is lacking, Carter may not cure the mortgage default through his bankruptcy plan. In essence, Wells Fargo asserts that without privity of contract, there is no debtor-creditor relationship. Without a debtor-creditor relationship, Wells Fargo argues that Carter cannot force Wells Fargo to accept his terms of repayment under a chapter 13 plan.

Wells Fargo relies on the Bankruptcy Code's definitions of "creditor" and "claim" in support of its argument. Section 101(10)(A) provides that the definition of "creditor" includes an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief . . . ." 11 U.S.C. § 101(10)(A) (emphasis added). The term "claim" is defined in § 101(5)(A) as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). Wells Fargo argues that since Carter was

not a party to the mortgage agreement and is not personally liable on the mortgage debt, Wells Fargo does not have a "claim" against Carter, as required by § 101(10)(A). Accordingly, Wells Fargo is not a creditor in this case and Carter cannot pay his mother's mortgage obligation through his bankruptcy plan.

In *Johnson*, the Supreme Court held that a debtor—who was not personally liable on a mortgage—could pay the mortgage through the debtor's chapter 13 plan. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). The *Johnson* debtor initially filed a chapter 7 bankruptcy petition and was subsequently discharged of all personal liability under his mortgage. *Id.* at 80. After the conclusion of the chapter 7 case, the state court entered an *in rem* judgment for approximately $200,000.00 in favor of the mortgagee, and the mortgagee subsequently attempted to foreclose on the debtor's farm. *Id.* Before the foreclosure sale occurred, the debtor filed a chapter 13 petition. *Id.* at 81. The debtor listed his mortgage as a claim against his estate. *Id.* The mortgagee objected to its inclusion in the chapter 13 case. *Id.* The mortgagee argued that since the debtor's previous chapter 7 case discharged the debtor's personal liability on the mortgage, the mortgagee no longer had a "claim" against the debtor. *Id.*

The Supreme Court disagreed, "concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)." *Id.* at 84. The Supreme Court relied upon its previous finding in *Davenport* that "Congress intended by [§ 101(5)(A)'s] language to adopt the broadest available definition of 'claim.'" *Id.* at 83 (citing *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 558, 563-64, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990)). Similarly, *Davenport* determined that the "right to payment" under § 101(5)(A) means "nothing more nor less than an enforceable obligation." *Id.* (citing *Davenport*, 495 U.S. at 559). Given the broad definition of a "right to payment," the Supreme

Court determined that "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Id.* at 84.

Although *Johnson* is factually distinct from the case at hand, *Johnson's* definition of a "claim" is directly linked to the resolution of Wells Fargo's privity of contract argument. *See Citicorp Mortgage Inc. v. Lumpkin (In re Lumpkin)*, 144 B.R. 240, 242 (Bankr. D. Conn. 1992) ("The reasoning . . . of *Johnson* clearly governs the present proceeding involving a property transfer to a debtor where an existing mortgage has not been assumed."); *In re Hutcherson*, 186 B.R. 546, 550 (Bankr. N.D. Ga. 1995) (finding that the court was "bound to apply the *Johnson* reasoning to the case before it" in a case factually similar to the case at hand).  *Johnson* makes clear that privity of contract is not a condition precedent to a debtor's treatment of a mortgage in chapter 13.  To the contrary, so long as the mortgagee has a claim *in rem* against the mortgaged property, the property may be included within a chapter 13 plan. *See In re Wilcox*, 209 B.R. 181, 182 (Bankr. E.D.N.Y. 1996) ("[T]his Court concludes that [mortgagee] holds a 'claim' against the Debtor's estate, even though no privity of contract ever existed between it and the debtor."); *Bank of America v. Garcia (In re Garcia)*, 276 B.R. 627, 631 (Bankr. D. Ariz. 2002) ("Bankruptcy Code recognizes a debtor-creditor relationship whenever a creditor holds a claim secured by the debtor's property, even if the debtor has no personal liability.") (citing *Johnson* 501 U.S. at 78); *In re Curington*, 300 B.R. 78, 84 (Bankr. M.D. Fla. 2003) ("The Supreme Court in *Johnson* told us that a debtor can include a claim in a Chapter 13 plan, even when the debtor is not personally liable for the underlying debt.").

In this case, Wells Fargo has an *in rem* claim against the Debtor's property. Accordingly, based on *Johnson*, the Court determines that Wells Fargo has a claim that is subject to inclusion within Carter's bankruptcy plan.

**2. Modification of the Mortgage Contract**

Wells Fargo further argues that even if Carter may include Wells Fargo's mortgage in a bankruptcy plan, Carter's proposed plan must fail because it seeks to modify the terms of the mortgage agreement in violation of 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) provides, in part, that the bankruptcy plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . . ." 11 U.S.C. § 1322(b)(2). Thus, according to Wells Fargo, § 1322(b)(2) prevents Carter from paying the full outstanding indebtedness on the mortgage, which already matured pre-petition, over the course of Carter's chapter 13 plan.

Carter claims that § 1322(c)(2) contains an exception to § 1322(b)(2) which enables him to modify Wells Fargo's mortgage and pay the full outstanding indebtedness over the course of his bankruptcy plan. Section 1322(c)(2) provides,

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2).

After a survey of decisions addressing the role of § 1322(c)(2), the Court denies Wells Fargo's § 1322(b)(2) objection. First, in *Escue*, the bankruptcy court held that debtors may pay a mortgage that matured pre-petition over the course of the debtors' bankruptcy plan under § 1322(c)(2). *In re Escue*, 184 B.R. 287, 292 (Bankr. M.D. Tenn. 1995). Noting that the

language of § 1322(c)(2) was "not perfectly clear," the Court turned to § 1322(c)(2)'s legislative history and the overall purposes of chapter 13 in support of its decision. *Id.* at 292-93.

The legislative history states that § 1322(c)(2) was intended to overrule the Third Circuit's *Perry* decision. *Id.* at 293 (citing *First Nat'l Fid. Corp. v. Perry*, 945 F.2d 61 (3rd Cir. 1991)); *see also Witt v. United Cos. Lending Corp (In re Witt)*, 113 F.3d 508, 514 (4th Cir. 1997) (finding that the legislative history shows Congress's intent to overrule *Perry*). In *Perry*, the Third Circuit held that, under § 1322(b)(2), a chapter 13 debtor could not utilize § 1325(a)(5) to provide for a mortgage debt by paying the full amount of the secured claim through the bankruptcy plan. *Id.* Since the creditor had previously obtained a foreclosure judgment, *Perry* held that the mortgagee was entitled to immediate payment in full. *Id.* Section 1322(c)(2) overruled *Perry* by permitting debtors to modify the mortgagees' rights pursuant to § 1325(a)(5) when the debtors' plan proposes to pay the mortgagee in full over the course of the bankruptcy. *Id.*

The *Escue* Court further supported its finding by noting that "[c]hapter 13's overall policy is to facilitate the adjustment of debts by allowing flexible repayment schedules to promote Chapter 13 repayment rather than liquidation under Chapter 7." *Id.* at 292 (citations omitted). *Escue* then held, "based upon the legislative history, the stated objectives of Chapter 13, and Congress' preference for a Chapter 13 filing rather than a Chapter 7, that Congress intended to allow debtors to cure a mortgage indebtedness which matured or ballooned prepetition by providing for full payment of . . . the mortgage over the life of the Chapter 13 Plan." *Id.* at 293.

Numerous courts have since explicitly and implicitly agreed with the *Escue* decision. *See Witt* 113 F.3d at 514 (citing multiple decision, including *Escue*, in support of the proposition that

"§ 1322(c)(2) still provides significant relief for homeowners in Chapter 13 who need more flexibility in paying off their mortgage loans"); *In re Dasher*, 2000 WL 33743082, at *2 (Bankr. M.D. Ga. Oct. 27, 2000) (agreeing with the *Escue* "line of cases that § 1322(c)(2) allows debtors to provide a creditor with payment of a prepetition matured balloon over the life of the Plan"); *In re Watson*, 190 B.R. 32, 37 (Bankr. E.D. Pa. 1995) ("[T]he obvious purpose of § 1322(c)(2) was to serve as the antidote for the theory that § 1322(b)(2) barred the cure of a residential mortgage obligation which matured pre-petition."); *Newberry*, 2007 B.R. 2029312, at *2 (citing *Escue* in support of its holding that § 1322(c)(2) permits modification of a debt that matured pre-petition). The *Wilcox* decision is particularly noteworthy because its facts are nearly identical to those of the case at hand. *In Wilcox*, the bankruptcy court held that a chapter 13 debtor, whose father executed a reverse mortgage on his property, could pay the mortgage default through his chapter 13 plan pursuant to § 1322(c)(2). *Wilcox*, 209 B.R. at 183. The debtor in *Wilcox* inherited an interest in his father's homestead when his father died; the mortgage also matured upon the death of the debtor's father. *Id.* The Court determined that, based on the reasoning in *Escue*, § 1322(c)(2) permitted the debtor to pay the mortgagee's claim over the course of the bankruptcy plan.

Wells Fargo has failed to submit an argument concerning why this Court should not follow the *Escue* line of cases. In fact, Wells Fargo failed to address § 1322(c)(2) in its brief. The only case cited by Wells Fargo concerning this modification issue, *In re Witomski*, 126 B.R. 205 (Bankr. D. Md. 1990), was issued approximately four years before § 1322(c)(2) was enacted into law. *See In re Newberry*, 2007 WL 2029312, at *2 (Bankr. D. Vt. July 10, 2007) (explaining that § 1322(c)(2), which was part of the Bankruptcy Reform Act of 1994, "added an important exception" to § 1322(b)(2)). Accordingly, based on the case-law surveyed by the Court and

Wells Fargo's failure to address § 1322(c)(2), the Court denies Wells Fargo's objection to Carter's plan.  The Court finds that Carter may pay the full outstanding indebtedness of the mortgage over the course of his bankruptcy plan.

## Conclusion

For the reasons set forth above, the Court denies Wells Fargo's objection to Carter's chapter 13 plan and motion for relief from the automatic stay.  A separate order in accordance with this Memorandum Opinion will be issued.

SIGNED **December 28, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE